## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONIKA De OLIVEIRA | : | |
| | : | **Civil Action** |
| | : | **No.** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | **CIVIL ACTION COMPLAINT** |
| METAL ALLIANCE, INC. | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendant** | : | |

## PRELIMINARY STATEMENT

1.    This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees, and other relief on behalf of Plaintiff, Monika De Oliveira. Plaintiff was an employee of Defendant, Metal Alliance, Inc. (MAI), who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

2.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e et seq., the Pregnant Workers Fairness Act (PWFA), 42 U.S.C. § 2000gg et seq., the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, as well as the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 and the Philadelphia Fair Practices Ordinance (PFPO).

1

**JURISDICTION AND VENUE**

3.    The jurisdiction of this Court is invoked, and venue is proper in this district, as Plaintiff's claims are substantively based on Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, the Pregnant Workers Fairness Act, the Family and Medical Leave Act, the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance.

4.    The Eastern District of Pennsylvania has general jurisdiction over the Defendant, and specific jurisdiction over this matter as the events giving rise to Plaintiff's claims occurred in the Eastern District.

**PARTIES**

5.    Monika De Oliveira (hereinafter "Plaintiff") is an adult individual residing in Philadelphia County, Pennsylvania.

6.    MAI (hereinafter "Defendant") is a business, company, entity, partnership, franchise, fictitious name, proprietorship, or corporation existing and/or qualifying under the laws of the Commonwealth of Pennsylvania and operating in the City of Huntington Valley, Montgomery County, Pennsylvania.  By naming MAI, Plaintiff includes all companies, corporations, individuals, or other entities that have ownership or control of MAI where Plaintiff worked.

7.    At all times material and relevant to this complaint, Defendant was acting by and through its agents, servants, workers, employees and/or representatives who were acting within the course and scope of their employment and/or agency with said Defendant.

8.    At all times material herein, Defendant is a "person" and "employer" as defined under the statues and Acts invoked herein.

9. At all times material herein, the Defendant is an employer as defined by the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance.

10. At all times relevant, Defendant was an "employer" engaged in commerce or in an industry or activity affecting commerce, within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(i).

## ADMINISTRATIVE EXHAUSTION

11. On or around July 7, 2025, Plaintiff timely filed a Charge of Discrimination of sex and pregnancy status with the US Equal Employment Opportunity Commission (EEOC) and dual-filed with the Philadelphia Commission on Human Relations (PCHR).

12. The case was investigated by the EEOC.

13. On May 15, 2026, the EEOC issued a Determination and Notice of Rights.

14. As such, the administrative remedies for Plaintiff's claim have all been exhausted.

## UNDERLYING FACTS

15. Plaintiff repeats and re-alleges the allegations set forth in all previous paragraphs of this Complaint as if they were set forth in full herein.

16. At all times relevant, Defendant was an employer covered by Title VII, and the PDA, employing 15 or more employees.

17. Plaintiff was a member of a protected class based on her sex, pregnancy, and/or related medical conditions under 42 U.S.C. § 2000e(k).

18. Plaintiff was qualified for her position and performing her job duties satisfactorily.

19. On or about September 26, 2022, Defendant hired Plaintiff as an Assistant Office Manager at its Huntington Valley, PA location.

3

20. During Plaintiff's employment, she became pregnant and notified MAI of her pregnancy in or around September 2024, as well as her due date on or about January 22, 2025.

21. In anticipation for her maternity leave, Plaintiff's boss, Nick Fedele, tasked her with training employees who were going to be covering her role during her absence.

22. Plaintiff requested a twelve-week medical leave of absence to accommodate her pregnancy.

23. By doing so, Plaintiff engaged in protected conduct under Title VII, the PDA, the PWFA, the PHRA and the PFPO.

24. Prior to announcing her pregnancy, Plaintiff had the option to work remotely *every other* Friday.

25. After announcing her pregnancy, in September 2024, Defendant's Owner, Nick Fredele, emailed all administrative employees a seemingly random remote work policy change which stated all administrative employees had the option to work remotely *every* Friday.

26. However, in the email, Nick Fedele wrote that Plaintiff only had the option to work remotely on Wednesdays. Plaintiff was the only administrative employee not provided the option of working remotely on Fridays.

27. Plaintiff's managers—Deanie Christensen and/or Nick Fedele—led her to believe her 6-week pregnancy leave was an accommodation extended to her and that her job would be protected while she was on leave.

28. This leave was to continue for six weeks initially (paid for with STD) but was approved and extended for an additional six weeks of unpaid leave.

4

29.   At the end of the first six weeks of leave, Plaintiff was contacted by Ms. Christensen, who asked if one of the drivers could come to collect her laptop, which she claimed was needed to view training videos.

30.   However, Plaintiff is aware that her boss already had access to those videos. Consequently, Plaintiff decided to bring her laptop in herself because she was planning to bring her infant child in to meet everyone.

31.   Since a specific date of return was never discussed, Plaintiff reached out to her manager and boss (Nick Fedele) via email asking to discuss her return so that she could be provided with a specific date.

32.   The following day her manager responded stating they would plan for a meeting to discuss.

33.   The meeting was scheduled for April 17, 2025, and was held virtually with Ms. Christensen, Mr. Fedele and a MetLife representative.

34.   Plaintiff was informed that there had been a "restructuring of positions" and that there was no position for her to return to.

35.   Later that day, Plaintiff looked on indeed.com in an effort to find subsequent employment.

36.   When she did, she saw that the day prior to the meeting (on or about April 16, 2025), Defendant posted a position with her responsibilities for part time and less pay.

37.   Plaintiff was never offered that position.

38.   On or about April 17, 2025, Defendant terminated Plaintiff's employment.

39.   Defendant terminated Plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964, as amended, specifically by The Pregnancy Discrimination Act, (PDA) The

Pregnant Worker's Fairness Act (PWFA), the Pennsylvania Human Relations Act (PHRA) and the Philadelphia Fair Practices Ordinance (PFPO).

40. As a direct result of the actions and/or conduct of Defendant, Plaintiff suffered serious and continuing damages and injuries, including, but not limited to, loss of income, benefits, damage to her reputation, and emotional pain and suffering.

41. The actions and conduct of Defendant were willful and malicious and were undertaken for the purpose of discriminating and/or retaliating against the Plaintiff.

## COUNT ONE
**Violation of Title VII of the Civil Rights Act of 1964, as amended, specifically by The Pregnancy Discrimination Act, (PDA) The Pregnant Worker's Fairness Act (PWFA), the Pennsylvania Human Relations Act (PHRA) and the Philadelphia Fair Practices Ordinance (PFPO):**
**Pregnancy/Sex Discrimination**

42. Plaintiff repeats and re-alleges the allegations set forth in all previous paragraphs of this Complaint as if they were set forth in full herein.

43. Pursuant to the Acts above and as amended, Plaintiff was protected from discrimination in her employment on the bases of her pregnant status and/or her sex.

44. Plaintiff was a pregnant female.

45. Plaintiff was performing at a satisfactory level.

46. Defendant terminated Plaintiff's employment.

47. Defendant treated Plaintiff less favorably than similarly situated, non-pregnant and/or nonfemale employees, in violation of the Acts above.

48. As a direct result of the actions and/or conduct of Defendant, Plaintiff suffered serious and continuing damages and injuries, including, but not limited to, loss of income, benefits, damage to her reputation, and emotional pain and suffering.

49.    Defendant's actions and conduct were willful and malicious and were undertaken for the purpose of discriminating against the Plaintiff.

50.    Defendant, through its managers, supervisors, and employees, violated the Acts above, by discriminating Plaintiff based on her pregnant status/sex.

WHEREFORE, Plaintiff respectfully requests backpay, front pay, emotional distress damages, compensatory damages and punitive damages, as well as costs, interest and other relief the Court may deem appropriate under the circumstances.

## COUNT TWO
**Retaliation Under Title VII of the Civil Rights Act of 1964, as amended; the Pennsylvania Human Relations Act; and the Philadelphia Fair Practice Ordinance**

51.    Plaintiff repeats and re-alleges the allegations set forth in all previous paragraphs of this Complaint as if they were set forth in full herein.

52.    Plaintiff engaged in a protected activity when she (1) sought and received an accommodation from Defendant; and (2) filed an EEOC charge against Defendant.

53.    Defendant took an adverse action against Plaintiff when it terminated her employment.

54.    Defendant's actions or inaction occurred shortly after Plaintiff engaged in her protected activity.

55.    A direct causal connection exists between Plaintiff's protected activity and her termination.

56.    As a direct result of the actions and/or conduct of Defendant, Plaintiff suffered serious and continuing damages and injuries, including, but not limited to, loss of income, benefits, damage to her reputation, and emotional pain and suffering.

57.     The actions and conduct of Defendant were willful and malicious and were undertaken for the purpose of retaliating against the Plaintiff.

58.     Defendant violated the Acts above when it retaliated against Plaintiff because she engaged in a protected activity.

WHEREFORE, Plaintiff respectfully requests backpay, front pay, emotional distress damages, compensatory damages and punitive damages, as well as costs, interest and other relief the Court may deem appropriate under the circumstances.

**MALAMUT & ASSOCIATES, LLC**

*/s/ Mark Natale, Esquire*
Mark Natale, Esquire